

One South Church Ave., Suite 700
Tucson, Arizona 85701-1611

Rob Charles, State Bar No. 007359
E-mail: RCharles@LRLaw.com

Erin O. Simpson, State Bar No. 021325
Direct Dial: (520) 629-4470
Direct Fax: (520) 879-4729
E-mail: Esimpson@LRLaw.com

*Attorneys for Plaintiff Dealer Services Corporation*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MAJDI KATIBA and<br>SHARON KATIBA,<br><br>           Debtors.<br><br>DEALER SERVICES CORPORATION,<br><br>           Plaintiff,<br><br>  vs.<br><br>MAJDI KATIBA,<br><br>           Defendant. | Chapter: 13<br><br>Case No. 4:09-bk-14633-JMM<br><br><br><br><br>Adversary No. 4:09-ap-00963-JMM<br><br>**MOTION FOR SUMMARY JUDGMENT** |

      Pursuant to Federal Bankruptcy Rule 7056 and Local Rule 9013-1, Plaintiff Dealer Services Corporation ("DSC") respectfully moves for summary judgment on the basis that Defendant Majdi Katiba's debt to DSC is non-dischargeable under 11 U.S.C. § 523(a)(4). This request is based on this motion, the accompanying memorandum of points and authorities, the separate Statement of Facts in Support of Motion for Summary Judgment filed simultaneously herewith including the Affidavit of Ms. Kathy Clark and attached exhibits, the Court's record in this case, and any argument the Court may allow at the time of the hearing.



## Memorandum of Points and Authorities

### A. Procedural Background.

Defendant Majdi Katiba ("Katiba") petitioned for relief under Chapter 13 of the Bankruptcy Code on June 26, 2009. On August 20, 2009, DSC filed this adversary action [DE 1], alleging that the debt that Katiba owes DSC is non-dischargeable under 11 U.S.C. § 523(a)(4) for the reason that Katiba misappropriated DSC funds while acting in a fiduciary capacity and/or and embezzled funds DSC provided to him for the purpose of floor planning vehicles. Katiba filed his Response to Adversary Complaint on September 23, 2009 ("Answer") [DE 6].

### B. Facts Entitling DSC to Summary Judgment.

On or about July 1, 2005, DSC entered into a Note and Security Agreement (the "Note") with Majdi Mohammed Katiba dba Majdi Auto Sales. A true and accurate copy of the Note is attached hereto and incorporated herein by reference as **Exhibit A**. [SOF 1].

DSC is the owner and holder of the Note. [SOF 2].

Katiba executed the Note in his individual capacity and as owner of Majdi Auto Sales. [SOF 3].

Katiba is, and was at all times relevant to this proceeding, a sole proprietor doing business as Majdi Auto Sales. [SOF 4].

Under the terms of the Note, DSC granted Katiba a line of credit in the amount of $100,000.00 for the purpose of floor-planning Katiba's purchases of vehicles for Katiba's used car lot or business. [SOF 5].

Under the terms of the Note, Katiba granted DSC a security interest in all of Katiba's assets and properties wherever located, including, without limitation, all equipment of any kind or nature; all vehicles, vehicle parts and inventory then owned or thereafter acquired; purchase money inventory, the purchase of which was financed or floorplanned by DSC for Katiba, of whatever kind or nature, and all returns, repossessions, exchanges, substitutions, attachments, additions, accessions, accessories, replacements, and proceeds thereof; all accounts receivable, chattel paper, and general intangibles then



owned or thereafter acquired by Katiba, together with the proceeds thereof; and all of Katiba's documents, books and records relating to the foregoing (the "Collateral"). [SOF 6].

DSC filed a UCC Financing Statement (the "Financing Statement") with the Arizona Secretary of State, perfecting DSC's lien on Katiba's inventory and certain other Collateral. A true and accurate copy of the Financing Statement is attached hereto and incorporated herein by reference as Exhibit C. [SOF 7].

Katiba actively participated in the day to day operations of Majdi Auto Sales. [SOF 8].

Between October 14, 2008 and the Petition Date, DSC advanced funds to Katiba and to certain third parties on Katiba's behalf for the purchase of vehicles as Collateral pursuant to the terms of the Note. [SOF 9].

In particular, Katiba purchased the following vehicles on the following dates for his inventory with funds advanced by DSC under the terms of the Note:

|   | PURCHASE / FLOOR DATE | YEAR | MAKE | MODEL | VIN # | PRINCIPAL BALANCE |
|---|---|---|---|---|---|---|
| 1 | 10/14/2008 | 2008 | Chevy | Cobalt | 223712 | $4,868.66 |
| 2 | 10/29/2008 | 2003 | Dodge | Neon | 208452 | $1,140.61 |
| 3 | 12/31/2008 | 2002 | Pontiac | Grand … | 172800 | $2,451.25 |
| 4 | 01/21/2009 | 2003 | Toyota | Tundra | 437100 | $8,000.00 |
| 5 | 01/21/2009 | 2004 | Toyota | Highlander | 031373 | $8,400.00 |
| 6 | 01/21/2009 | 2004 | Volkswagen | Passat | 104874 | $5,310.00 |

(the "Floorplanned Vehicles") [SOF 10].

Katiba did not list the Floorplanned Vehicles as assets on his Schedule B, which was filed with the Court under oath. Assuming that Katiba did not perjure himself on his Schedules and at the Meeting of Creditors, it is reasonable to assume that Katiba has sold or otherwise disposed of the Floorplanned Vehicles. [SOF 11].

Under the terms of the Note, DSC possesses an immediate and unqualified right to possession of any proceeds resulting from the sale of the Collateral, and such proceeds are required to be held in trust for the benefit of DSC. [SOF 12].



1    Katiba did not inform DSC that he had sold the Floorplanned Vehicles or give DSC
2    any accounting for the proceeds he received from the sales. [SOF 13].
3    The Floorplanned Vehicles remain unaccounted for to DSC.[14].
4    Katiba returned a small portion but not all of the funds DSC advanced to Katiba in
5    trust toward the purchase of Floorplanned Vehicles 1-3.  [SOF 15].
6    Katiba returned none of the funds DSC advanced to Katiba in trust toward the
7    purchase of Floorplanned Vehicles 4-6.  [SOF 16].
8    Katiba sold out of trust the six Floorplanned Vehicles without remitting the
9    required portions of the proceeds of such sales to DSC.  [SOF 17].
10   As of the Petition Date, a balance of a balance of $30,170.52 in principal, excluding
11   interest, fees and other charges, remained due and owing, resulting from the sales of at
12   least six Floorplanned Vehicles out of trust.  [SOF 18].
13   Under the Note, Katiba represented, warranted and covenanted that he would "hold
14   any funds and proceeds payable to DSC, in the same form as received, ***in trust*** for DSC
15   and remit same to DSC pursuant to this Note."  [SOF 19].
16   Under the terms of the Note, all amounts received by Katiba from the sale of any
17   item of Inventory financed by DSC were required to be held in trust for the sole benefit of
18   DSC. [SOF 20].
19   Under the terms of the Note, the parties' agreement "may not be modified or
20   amended except under the written consent of DSC and [Katiba]."  [SOF 21].
21   Under the terms of the Note, "[n]o termination of this Note shall alter [Katiba's]
22   obligations and Liabilities relating to amounts funded or committed prior to the effective
23   date of such termination, and all rights and remedies, including without limitation, the
24   security interest granted herein and the rights of DSC as a secured party hereunder, shall
25   extend until all Liabilities owed by [Katiba] to DSC have been satisfied."  [SOF 22].
26   DSC did not agree to amend or terminate the Note at any time, whether in writing
27   or otherwise.  [SOF 23].
28   Katiba knew or had knowledge from the Note, at the time of the sales and



thereafter, that by selling the Floorplanned Vehicles without remitting the proceeds to DSC, he was breaching his fiduciary duty to DSC. [SOF 24].

Katiba knew or should have known that his sale of the Floorplanned Vehicles out of trust was likely to cause monetary losses to DSC. [SOF 25].

Katiba concealed the sales of the Floorplanned Vehicles from DSC with the intention of preventing DSC from exercising its rights, as a secured creditor, to the Floorplanned Vehicles and to the proceeds of the sales. [SOF 26].

Katiba kept the proceeds of the sales of the Floorplanned Vehicles and directed such funds to other uses, despite his knowledge that such funds were required to be held in trust for the sole benefit of DSC. [SOF 27].

As of the Petition Date, a principal balance of $30,170.52, excluding all interest, fees, and other charges, remains due and owing to DSC on the Floorplanned Vehicles. [SOF 28].

### C. Katiba's Debt to DSC is Non-Dischargeable Under 11 U.S.C. § 523(a)(4).

Pursuant to 11 U.S.C. § 523(a)(4), "discharge under section . . . 1328(b) of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." There is no genuine issue of material fact that Katiba entered into the Note; the Note created an express trust on the proceeds from sales of the Floorplanned Vehicles; and Katiba failed to turn over to DSC the proceeds upon sale of the Floorplanned Vehicles, misappropriating funds he held in a fiduciary capacity. Further, there is no material issue of fact that Katiba did so with fraudulent intent, failing to account for the proceeds or even to inform DSC of the sales. The undisputable facts show that Katiba engaged in defalcation and embezzlement of funds obtained from DSC. Therefore, his debt of $30,170.52 is non-dischargeable and remains due and owing to DSC.



### 1. Katiba Misappropriated Proceeds from Sales, Which He Held in a Fiduciary Capacity, and Failed to Account for the Proceeds to DSC.

Section 523(a)(4) excludes from dischargeability debts for fraud or defalcation while acting in a fiduciary capacity. *In re Lewis*, 97 F.3d 1182, 1185 (9th Cir. 1996). Defalcation is the "'misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds.'" *Id.* at 1186, quoting BLACK'S LAW DICTIONARY 417 (6th ed. 1990).[1] Under § 523(a)(4), defalcation "'includes the innocent default of a fiduciary who fails to account fully for money received.'" *Id.* quoting *In re Baird*, 114 B.R. 198, 204 (9th Cir. B.A.P. 1990). A party may be liable for defalcation regardless of whether he acted intentionally or negligently. *Id.* Indeed, defalcation "'reach[es] the conduct of all fiduciaries who [are] short in their accounts.'" *Id.*, quoting *In re Baird*, 114 B.R. at 204.

Katiba's Answer does not expressly dispute that he failed to turn over to DSC the proceeds from the sale of the Floorplanned Vehicles or that he failed to account to DSC for those proceeds. So the only question is whether, at the time he did so, he was acting in a fiduciary capacity as to DSC concerning the proceeds under the terms of the Note. The determination of whether a debtor is a fiduciary under § 523(a)(4) is a question of federal law. *In re Lewis*, 97 F.3d at 1185, citing *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986). Under federal law, the fiduciary duty must arise out of "an express or technical trust that was imposed before and without reference to the wrongdoing that caused the debt." *Id*. Furthermore, the determination of whether one is a trustee is determined partly by reference to state law. *Id*.

The parties agreed that Indiana law would govern the validity, enforceability and interpretation of the Note. Note at § 19. Thus, the issue becomes whether, under Indiana law, the terms of the Note created an "express or technical trust" relationship, "rather than

---

[1] *See also In re Banks*, 263 F.3d 862, 870 (9th Cir. 2001), quoting *In re Niles*, 106 F.3d 1456, 1459 (9th Cir. 1997) ("Such a debt is nondischargeable under § 523(a)(4) only 'where (1) an express trust existed, (2) the debt was caused by fraud or defalcation, and (3) the debtor acted as a fiduciary to the creditor at the time the debt was created.'").



a trust *ex maleficio*,[2] within the meaning of section 523(a)(4)." *In re Lewis*, 97 F.3d at 1185.

Indiana Code § 30-4-1-1(a) states that "[a] trust is a fiduciary relationship between a person who, as trustee, holds title to property and another person for whom, as beneficiary, the title is held." Indiana common law further directs that "the term 'express trust" signifies a trust created by the direct and positive acts of the parties as evidenced by some deed, will, or other instrument, wherein the language employed either expressly or by plain implication evinces an intention to create a trust." *Ross v. Thompson*, 146 N.E.2d 259, 261 (Ind. App.1957), citing *Holsapple v. Schrontz*, 117 N.E. 547, 549 (Ind. App.1917). "If the intent to create a trust is clear and the essential elements may be fairly deduced from the language employed, the trust will not fail for the lack of more adequate expression." *Holsapple*, 117 N.E. at 549.

Here, Katiba entered into an agreement with DSC in which he not only granted to DSC a security interest in the Floorplanned Vehicles, but he also agreed to "hold any funds and proceeds payable to DSC [from the sale of those Floorplanned Vehicles], in the same form as received, ***in trust*** for DSC and remit same to DSC" under the terms of the Note. Note at § 3(f) (emphasis added). The parties' intent is unambiguous: the Note created an express trust, and in turn, a fiduciary relationship between Katiba and DSC.[3] While acting as a fiduciary, Katiba misappropriated the proceeds from the sales of the Floorplanned Vehicles and failed to account for funds owed to DSC, making Katiba liable for defalcation under § 523(a)(4), and his debt to DSC non-dischargeable.

DSC has not found Ninth Circuit authority considering defalcation issues under a floorplan agreement of the kind presented here. In a recent case with strikingly similar

---

[2] An *ex maleficio* trust is a trust that arises by operation of law upon an unlawful act. *Davis v. Aetna Acceptance*, 293 U.S. 328, 333 (1934). The trust at issue here is not an *ex maleficio* trust because it was created by the express terms of the parties' agreement, and existed independently of whether Katiba misappropriated funds DSC advanced to him in trust.

[3] Indeed, Katiba does not dispute that the Note created that the Note created a fiduciary relationship between him and DSC "during the life of the Note and Security Agreement." *See* Complaint at ¶ 10; Answer at ¶ 10.



facts, however, the Fourth Circuit held that an agreement between a floorplanning company and a farming equipment dealer—in which the dealer was to place proceeds from sales of floorplanned equipment in trust—created a trust and therefore a fiduciary relationship between the parties. *In re Strack*, 524 F.3d 493 (4th Cir. 2008).

In *Strack*, the floorplan agreement stated that the dealer "shall segregate the proceeds and hold the same *in trust* [for the floorplanner]." *Id*. at 495 (emphasis added). The court explained that whether money is classified as a trust or as debt depends on the parties' intentions:

> If the intention is that the money shall be kept or used a separate fund for the benefit of the payor or a third person, a trust is created. If, however, the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.

*Id*. at 499 (citation omitted). The court found that the language of the parties' agreement, which—as in this case—twice refers to the proceeds of sales being held "in trust", "unequivocally shows an intention that [the dealer] take possession of the proceeds, segregate them from its own funds," and "hold" them on behalf of the floorplanner. *Id.* Finding that although the trust provision "forms a relatively small part of the Agreement," the court determined that "it demonstrates, 'with reasonable certainty,' the intent to establish an express trust." *Id.* (internal citation omitted). Because a trust was created, the court found a "fiduciary relationship . . . with respect to the sales proceeds" existed between the dealer and the floorplanner. *Id.* At least one other court has also held that floorplan agreements that expressly state that the dealer is to place proceeds of a sale "in trust", and to keep the proceeds separate under a formal, express trust, impose a fiduciary duty on the debtor concerning the handling of those proceeds. *See, e.g.*, *In re Rebhan*, 45 B.R. 609, 613 (Bankr. S.D. Fla. 1985).

Similarly, in this case, the parties entered into an agreement which expressly states that Katiba is to "hold any funds and proceeds payable to DSC, in the same form as received, *in trust* for DSC and remit same to DSC." Note at ¶ 3(f) (emphasis added). The



Note further states that "[u]pon the sale of any item of inventory, [Katiba] shall hold the amount received from the disposition of inventory *in trust* for the benefit of DSC and [Katiba] shall pay to DSC, in accordance with this Note an amount equal to the unpaid balance of the Inventory Liabilities and Liabilities relating to such Inventory." Note at § 4(g) (emphasis added).

As opposed to an ordinary creditor/debtor relationship, Katiba did not have the "unrestricted" use of the funds, but, rather, had a trust relationship in which he was to use the funds to floor plan the purchase of vehicles, and upon sale, segregate the funds from the proceeds of the sale for the benefit of DSC in a trust. Thus, an express trust relationship was created, and Katiba is a fiduciary.

Once DSC has established that a fiduciary relationship exists, that funds have been entrusted to the fiduciary that are not paid over or accounted for, the burden shifts to Katiba as the debtor-fiduciary to establish that a defalcation did not occur. *In re Niles*, 106 F.3d 1456, 1462 (9th Cir. 1997).

The Answer admits Katiba entered into the Note with DSC and that the Note required him to hold any funds and proceeds payable to DSC, in the same form as received, in trust for DSC, and to remit the same to DSC pursuant to the Note's terms.[4] Answer at ¶¶ 4, 6. The only explanation Katiba offers for his failure to hold the proceeds in trust and remit them to DSC is the vague allegation that his obligations under the Note somehow terminated or were modified by his allegedly declining to enter into a new Demand Promissory Note and Security Agreement with DSC in 2006. Answer at ¶ 4.[5]

---

[4] Under Bankr. Rule 7008, incorporating Fed. R. Civ. P. 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Katiba's answer paragraphs 4-6 fails to deny that he entered into the Note, that DSC perfected its interest in the collateral by filing a UCC statement, and that under the Note, Katiba represented, warranted and covenanted that he would hold any funds and proceeds payable to DSC, in the same form as received, in trust for DSC and that he was to remit the same to DSC pursuant to the terms of the Note.

[5] Alternately, Katiba "point[s] out that the overall economy is in a recession and for some persons it could be more accurately described as a depression." Answer at ¶ 11-17. The



1 Katiba offers no evidence of any proposed written modification or termination of the Note,
2 however, and the terms of the Note prohibit modification without a written agreement
3 between the parties.

4      Katiba must present more than mere speculation or conjecture to defeat summary
5 judgment; he must show that a reasonable trier of fact might rule in his favor based on the
6 evidence in the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). He
7 cannot do this and DSC should be granted summary judgment because there is no genuine
8 issue of material fact and DSC is entitled to judgment as a matter of law. Bankr. Rule
9 7056, incorporating Fed. R. Civ. P. 56.

10      The plain facts are that Katiba received funds from DSC to purchase certain
11 vehicles in trust under the terms of the Note, and agreed to hold such funds separately and
12 remit them to DSC upon sale of the Floorplanned Vehicles. Katiba did not do this.
13 Instead, he sold or otherwise disposed of the vehicles out of trust, kept the money and
14 never accounted to DSC for the monies he received in trust. He therefore is liable for
15 defalcation concerning the funds, rendering his debt to DSC non-dischargeable under 11
16 U.S.C. § 523(a)(4). As to defalcation, his motives are irrelevant, regardless of whether he
17 acted intentionally or negligently; his actions still amount to defalcation.

18      **2.    Katiba Embezzled the Proceeds.**

19      Alternately, should this Court determine that Katiba was not acting in a fiduciary
20 capacity when he retained the proceeds of the sales, he is nonetheless liable for
21 embezzlement, rendering the debt he owes to DSC non-dischargeable under 11 U.S.C. §
22 523(a)(4).

23      Because the term "while acting in a fiduciary capacity" does not qualify the term
24 "embezzlement" in § 523(a)(4), any funds that are embezzled, regardless of whether the
25 debtor was a fiduciary, are non-dischargeable. COLLIER ON BANKRUPTCY, 15th Ed.
26 Revised, ¶ 523.10(2); *see also In re Rebhan*, 45 B.R. at 614 (nondischargeability under §

27 ―――――――――――
28 state of the economy is not an excuse for defalcation or embezzlement and certainly does not raise a genuine issue of material fact.



523(a)(4) does not require existence of fiduciary relationship). Embezzlement in this context has been defined as "the fraudulent misappropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269 (1885). Fraudulent intent can be inferred by the defendant's actions and surrounding circumstances. *In re Allman*, 147 B.R. 122, 125 (Bankr. E.D. Va. 1992).

Numerous courts have held that a debtor/car-dealer's failure to turn over sale proceeds to the floor-planning company when the floor-plan agreement explicitly calls for the debtor to hold these sale proceeds "in trust" amounts to embezzlement within the discharge exception of § 523(a)(4). *See Id.* at 125-26 (under parties' agreement, plaintiff was entitled to proceeds of vehicle sales and dealer was to hold proceeds of sales "in trust"; dealer instead pocketed the proceeds and gave false assurances to the plaintiff amounting to embezzlement and fraudulent intent). *See also In re Routson*, 160 B.R. 595, 610-11 (Bankr. D. Minn. 1993) (defendant who used proceeds from sale of floor-planned inventory in willful breach of terms of floor plan agreement was liable for embezzlement and larceny, precluding discharge); *In re Blanton*, 149 B.R. 393, 394-95 (Bankr. E.D. Va. 1992) (no discharge where under oral agreement, plaintiff was entitled to proceeds of vehicle sales, defendant pocketed proceeds without remitting proceeds to plaintiff, and made false representations to plaintiff concerning reasons for delayed payment, giving rise to inference of fraudulent intent).

Similarly, Katiba was to hold proceeds from the sale of vehicles for which DSC had advanced funds to him in trust. Instead, Katiba pocketed the funds, provided no accounting to DSC, and concealed the sales from DSC. His actions and the surrounding circumstances give rise to an inference of fraudulent intent. Thus, Katiba is liable for embezzlement, and the debt he owes to DSC is non-dischargeable under 11 U.S.C. § 523(a)(4).

**D. Conclusion.**

For the reasons set forth herein, the Court should grant DSC summary judgment,



finding that Defendant Majdi Katiba engaged in defalcation and embezzlement, and thus his principal debt of $30,170.52 to DSC is non-dischargeable under 11 U.S.C. § 523(a)(4).

DATED February 15, 2010.

**LEWIS AND ROCA LLP**

By /s/ EOS (# 021325)
Rob Charles
Erin O. Simpson
Attorneys for Dealer Services Corporation

Copy of the foregoing
electronically transmitted February 15, 2010 to:

Ronald Ryan
Ronald Ryan, P.C.
1413 E. Hedrick Dr.
Tucson, Arizona 85719-2633
ronryanlaw@cox.net
Attorneys for Defendant

Dianne C. Kerns
7320 N. La Cholla #154 PMB 413
Tucson, Arizona 85741-2305
dckerns@dcktrustee.com
Trustee

Yvonne S. Ross
LEWIS AND ROCA LLP